IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KEURIG GREEN MOUNTAIN, INC.,

    Plaintiff,

v.

TOUCH COFFEE & BEVERAGES, LLC,

    Defendant.

Civil Action No. _____

## COMPLAINT AND JURY DEMAND

Plaintiff Keurig Green Mountain, Inc. ("Keurig"), on this Complaint against Defendant Touch Coffee & Beverages, LLC ("Touch"), hereby avers as follows:

## NATURE OF THE ACTION

1. Plaintiff Keurig is a leader in the coffee and coffee maker segments. Keurig employs approximately six thousand employees. Keurig's innovative K-Cup® single serving coffee packs and Keurig brewers have changed the way that consumers prepare and enjoy their coffee and other beverages.

2. As a result of Keurig's commitment to innovation and extensive investment in research and development, the United States Patent and Trademark Office has granted Keurig numerous patents covering a wide range of innovations in the single-serve beverage space. Among these patents are Keurig's U.S. Patent Number 6,655,260 (the Keurig '260 patent).

3. Defendant Touch knew of the Keurig '260 patent at least as early as November 2014, and indeed cited that patent when filing its own patent applications.

Accordingly, on information and belief, Touch has been well aware, since at least November 2014, that it has been making, importing, and selling products covered by Keurig's '260 patent.

4. Touch's business model attempts to capitalize on Keurig's innovations and popularity.

5. Touch markets its products as compatible with Keurig K-Cup® pods.

6. On October 23, 2015 – approximately one year after Touch's willful infringement began – counsel for Touch sent a letter to Keurig accusing Keurig of infringing Touch's patent portfolio.

7. On November 19, 2015 Touch and Keurig met to discuss Touch's infringement allegations, and have had several subsequent discussions.

8. The Parties remain in disagreement regarding these allegations of patent infringement.

9. Keurig comes to this Court seeking judgment of patent infringement against Touch and a declaration of non-infringement of Touch's patents.

## THE PARTIES

10. Plaintiff Keurig is a Delaware Corporation with a principal place of business in Burlington, Massachusetts.

11. Upon information and belief, Defendant Touch is a Delaware Corporation with corporate headquarters at 15312 East Valley Boulevard, City of Industry, California 91746. Touch can be served with process through its agent for service of process at Paracorp Incorporated, 2140 South Dupont Highway, Camden, Delaware 19934.

## JURISDICTION AND VENUE

12. This action arises under the Patent Act, 35 U.S.C. § 100, *et seq.* as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201-02.

13. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §§ 1391(b), (c) and (d) and 1400(b).

14. Touch is subject to this Court's personal jurisdiction because it has purposefully availed itself of the rights and benefits of the laws of Massachusetts, and its Massachusetts activities give rise to Keurig's claims.

## BACKGROUND

**Touch's Infringing Products**

15. Touch has five brewing systems on its website www.touchbeverages.com: the T214B, the T314B, the T414S, the T526S, and the T714C (the Touch Brewing Systems).

16. Each Touch Brewing System can use the Touch XLarge cup to brew a strong 12-14 ounce beverage.

17. Each Touch Brewing System has a brewing cycle that can brew a beverage by combining hot water with a beverage medium contained in a Touch XLarge cup.

18. The Touch XLarge cup is a single serve disposable cartridge.

19. Each Touch Brewing System has a holder for containing the Touch XLarge cup during the brew cycle.

20. Each Touch Brewing System comes with a Brewer part referred to in each respective user manual as the "Red Cup Holder."

21. The "Red Cup Holder" is the Touch Supercharger product.

22. The "Red Cup Holder" is a cup-shaped housing.

23. The "Red Cup Holder" has a bottom wall.

24. The "Red Cup Holder" has a side wall.

25. The Touch XLarge cup can be inserted into the "Red Cup Holder."

26. The Touch XLarge cup can be removed from the "Red Cup Holder."

27. The "Red Cup Holder" is structured and dimensioned to removably received the Touch XLarge cup.

28. Each Touch Brewing System has a lid that confines the Touch XLarge cup within the "Red Cup Holder."

29. The "Red Cup Holder" has a projection in its side wall.

30. The Touch XLarge cup has a depression in its side wall.

31. This depression in the Touch XLarge cup is designed to complement the projection in the "Red Cup Holder."

32. When the Touch XLarge cup is inserted into the "Red Cup Holder" it resists rotation in the "Red Cup Holder."

33. In particular, the projection in the "Red Cup Holder" coacts in mechanical interengagement with the depression in the Touch XLarge cup to resist rotation of the Touch XLarge cup in the "Red Cup Holder."

34. Each Touch Brewing System has two sharp probes that can pierce the Touch XLarge cup: a top probe underneath the cover and one of the two bottom probes in the "Red Cup Holder."

35. Each Touch Brewing System can pass hot water through a Touch XLarge cup in order to brew the 12-14 ounce cup beverage. This process can brew a beverage by infusion of the hot water with a beverage medium.

36. In particular, in each Touch Brewing System, hot water can flow through the top probe, through the Touch XLarge cup, and out of one of the two bottom probes in the "Red Cup Holder."

**Touch's Infringing Activities**

37. Touch sells and offers for sale the T414S, T526S, and the T214B brewing systems on its website, www.touchbrew.com.

38. Touch ships these brewers nationwide, including, on information and belief, to Massachusetts.

39. In December 2015, Touch entered into an agreement to distribute at least the T214B to Best Buy stores, including, on information and belief, in Massachusetts.

40. On information and belief, Touch uses and has used the Touch Brewing Systems.

41. Touch designed the Touch Brewing Systems.

42. On information and belief, Touch makes or has made the Touch Brewing Systems.

43. On information and belief, Touch imports the Touch Brewing Systems from China.

44. On information and belief, Touch exports the Touch Brewing Systems.

45. On information and belief, Touch sells and offers for sale a product called Supercharger.

46. On information and belief, Touch uses and has used the Supercharger in the Touch Brewing Systems.

47. On information and belief, Touch uses and has used the Supercharger in Keurig brewers.

48. Touch designed the Supercharger.

49. On information and belief, Touch makes or has made the Superchargers.

50. On information and belief, Touch imports the Supercharger from China.

51. On information and belief, the Touch Supercharger is on sale in the United States, including in Massachusetts.

52. On information and belief, Touch exports the Supercharger.

53. Touch sells and offers for sale Touch XLarge cups on its website, www.touchbrew.com.

54. Touch ships the Touch XLarge cups nationwide, including, on information and belief, to Massachusetts.

55. On information and belief, Touch has uses and has used the Touch XLarge cups in Touch Brewing Systems.

56. On information and belief, Touch has uses and has used the Touch XLarge cups in Keurig brewers with the Supercharger installed.

57. On information and belief, Touch makes or has made the Touch XLarge cups.

58. On information and belief, Touch exports the Touch XLarge cups.

59. Touch maintains a YouTube channel or channels.

60. With videos available on Touch's YouTube channel or channels, Touch instructs its customers how to replace the standard cup holder in Keurig brewers with the Touch "Supercharger," and use the modified Keurig brewer to brew a beverage using the Touch XLarge cup.

61. When used with the Touch "Supercharger" replacing the standard cup holder as instructed, Keurig brewers have a brewing cycle that can brew a beverage by combining hot water with a beverage medium contained in a Touch XLarge cup.

62. When used with the Touch "Supercharger" replacing the standard cup holder as instructed, Keurig brewers have a holder for containing the Touch XLarge cup during the brew cycle.

63. When used with the Touch "Supercharger" replacing the standard cup holder as instructed, Keurig brewers have a lid that confines the Touch XLarge cup in the "Supercharger."

64. When used with the Touch "Supercharger" replacing the standard cup holder as instructed, Keurig brewers have two sharp probes that puncture the Touch XLarge cup: a top probe underneath the cover and one of the two bottom probes in the Red Cup Holder.

65. When used with the Touch "Supercharger" replacing the standard cup holder as instructed, Keurig brewers can pass hot water through a Touch XLarge cup in order to brew the 12-14 ounce beverage. This process can brew a beverage by infusion of the hot water with a beverage medium.

66. In particular, when used with the Touch "Supercharger" replacing the standard cup holder as instructed in the Keurig brewer, hot water can flow through the

top probe, through the Touch XLarge cup, and out of one of the two bottom probes in the "Red Cup Holder."

**Touch's Knowledge of its Infringing Activities**

67. Keurig is a leader in the coffee and coffee maker segments. In the past three years, Keurig has spent a significant amount of money on research and development. Keurig's scientists and engineers focus on developing beverage and appliance technology platforms that consistently deliver on the key attributes of quality, convenience and choice.

68. As a result of Keurig's commitment to research and development, the United States Patent and Trademark Office has awarded Keurig and its predecessors numerous patents on innovative and market-shaping beverage and appliance technology, including the Keurig '260 patent.

69. During a November 19, 2015 meeting between representatives of Keurig and Touch, Keurig informed Touch of its ongoing infringement of the Keurig '260 patent.

70. In response, the Representatives for Touch indicated that they were previously aware of the Keurig '260 patent.

**Touch's Ongoing Infringement Allegations Against Keurig**

71. On October 23, 2015 counsel for Touch sent a letter to Keurig accusing Keurig of infringing Touch's patent portfolio: U.S. Patent Numbers 9,144,343 (the Touch '343 patent), 9,149,149 (the Touch '149 patent), 9,149,150 (the Touch '150 patent), and 9,149,151 (the Touch '151 patent) (collectively, the "Touch Patents").

72. The letter states that Touch owns the Touch Patents.

73. Each of the Touch Patents specifically mentions Green Mountain Coffee Roasters® and the Keurig® brand name.

74. Green Mountain Coffee Roasters changed its name to Keurig Green Mountain in March 2014.

75. The Keurig '260 patent is cited as prior art on the face of the Touch '149 patent, the Touch '150 patent, and the Touch '151 patent.

76. The published application that became the Keurig '260 patent is cited as prior art on the face of the Touch '343 patent.

77. The October 23, 2015 letter demanded a response by October 30, 2015.

78. The October 23, 2015 letter attached claim charts purporting to demonstrate Keurig's infringement of the Touch Patents by the "Keurig's 2.0 Brewer" and "Keurig's 2.0 Method of Brewing."

79. Representatives from Keurig and Touch met in Keurig's Burlington, Massachusetts office on November 19, 2015 to discuss Touch's allegations of infringement.

80. Discussions regarding Touch's allegations continued thereafter by telephone between Touch's representatives and Keurig's representatives in Massachusetts.

81. During these discussions in person and by telephone, Touch maintained its infringement allegations against Keurig.

## COUNT I

**(Infringement of the Keurig '260 Patent)**

82. The averments of the preceding paragraphs are restated.

83. Keurig owns the Keurig '260 patent. A copy of the Keurig '260 patent is attached to this Complaint as Exhibit A.

84. Touch has infringed, and continues to infringe, literally or under the doctrine of equivalents, at least claim 5 of the Keurig '260 patent by making, using, importing, exporting, offering to sell, and selling the Touch Brewing Systems and components thereof, including the Supercharger and the Touch XLarge cups, as well as by actively and intentionally inducing others to infringe at least claim 5 of the Keurig '260 patent, including but not limited to customers, to use the Touch Brewing Systems, Superchargers, and Touch XLarge cups and contributing to the infringement of at least claim 5 of the Keurig '260 patent by supplying the Touch Brewing Systems Superchargers, and Touch XLarge cups, including the Supercharger, to others, including but not limited to customers. There are no substantial non-infringing uses of the Touch Brewing Systems or components thereof, including the Supercharger and Touch XLarge cups.

85. At least since November 2014, Touch has been aware of the Keurig '260 patent. In November 2014, the named inventor of the Touch Patents submitted an information disclosure form to the United States Patent Office listing the Keurig '260 patent.

86. Moreover, on November 19, 2015 Touch representatives were specifically informed of the Keurig '260 patent by Keurig representatives.

87. At least since November 19, 2015, Touch has had actual notice that its conduct infringed the claims of the Keurig '260 patent, but Touch nevertheless continued its willful infringing conduct.

88. At least since November 19, 2015, Touch had actual notice that the conduct of Touch customers, suppliers, retailers, importers, exporters, and users, directly infringed the claims of the Keurig '260 patent.

89. Touch's infringement of the Keurig '260 patent has caused and continues to cause Keurig irreparable harm for which there is no adequate remedy at law, unless the Court enjoins Touch from continuing its infringing activities.

90. Upon information and belief, Touch's infringement of the Keurig '260 patent was and remains willful and deliberate.

## COUNT II

### (Declaration of Non-Infringement of the Touch '343 Patent)

91. The averments of the preceding paragraphs are restated.

92. An actual and justiciable controversy requiring declaratory relief exists between Keurig and Touch regarding Touch's ongoing allegations of infringement of the Touch '343 patent. A copy of the Touch '343 patent is attached to this Complaint as Exhibit B.

93. Keurig has not infringed, and is not infringing, any claim of the Touch '343 patent either directly or indirectly, either literally or under the doctrine of equivalents.

94. Keurig requests a declaration that it has not infringed, and is not infringing, any claim of the Touch '343 patent.

## COUNT III

### (Declaration of Non-Infringement of the Touch '149 Patent)

95. The averments of the preceding paragraphs are restated.

96. An actual and justiciable controversy requiring declaratory relief exists between Keurig and Touch regarding Touch's ongoing allegations of infringement of the Touch '149 patent. A copy of the Touch '149 patent is attached to this Complaint as Exhibit C.

97. Keurig has not infringed, and is not infringing, any claim of the Touch '149 patent either directly or indirectly, either literally or under the doctrine of equivalents.

98. Keurig requests a declaration that it has not infringed, and is not infringing, any claim of the Touch '149 patent.

### COUNT IV

**(Declaration of Non-Infringement of the Touch '150 Patent)**

99. The averments of the preceding paragraphs are restated.

100. An actual and justiciable controversy requiring declaratory relief exists between Keurig and Touch regarding Touch's ongoing allegations of infringement of the Touch '150 patent. A copy of the Touch '150 patent is attached to this Complaint as Exhibit D.

101. Keurig has not infringed, and is not infringing, any claim of the Touch '150 patent either directly or indirectly, either literally or under the doctrine of equivalents.

102. Keurig requests a declaration that it has not infringed, and is not infringing, any claim of the Touch '150 patent.

### COUNT V

**(Declaration of Non-Infringement of the Touch '151 Patent)**

103. The averments of the preceding paragraphs are restated.

104. An actual and justiciable controversy requiring declaratory relief exists between Keurig and Touch regarding Touch's ongoing allegations of infringement of the Touch '151 patent. A copy of the Touch '151 patent is attached to this Complaint as Exhibit E.

105. Keurig has not infringed, and is not infringing, any claim of the Touch '151 patent either directly or indirectly, either literally or under the doctrine of equivalents.

106. Keurig requests a declaration that it has not infringed, and is not infringing, any claim of the Touch '151 patent.

**RELIEF REQUESTED**

Plaintiff requests that this Court:

    A.    Enter judgment that Touch has directly and indirectly infringed the Keurig '260 patent literally and under the doctrine of equivalents;

    B.    Preliminarily and permanently enjoin Touch, and its officers, agents, servants, employees, representatives, and all persons acting in concert or participation with any of them, from committing further infringement of the Keurig '260 patent;

    C.    Award Keurig damages in accordance with 35 U.S.C. § 284, including all damages adequate to compensate it for Touch's infringement, in no event less than a reasonable royalty, such damages to be determined by a jury, and additionally an accounting sufficient to adequately compensate Keurig, and that such damages be awarded Keurig, together with interest, including prejudgment and post-judgment interest, and costs;

    D.    Determine that Touch has willfully and deliberately committed acts of patent infringement, and award Keurig treble damages in light of Touch's willful infringement, pursuant to 35 U.S.C. § 284;

    E.    Enter judgment declaring that Keurig has not and is not infringing any claim of the Touch '343 patent, either directly or indirectly;

    F.    Enter judgment declaring that Keurig has not and is not infringing any claim of the Touch '149 patent, either directly or indirectly;

    G.    Enter judgment declaring that Keurig has not and is not infringing any claim of the Touch '150 patent, either directly or indirectly;

  H. Enter judgment declaring that Keurig has not and is not infringing any claim of the Touch '151 patent, either directly or indirectly;

  I. Determine that this is an "exceptional case" pursuant to 35 U.S.C. § 285 and award Keurig its reasonable legal fees, costs, and expenses that it incurs in prosecuting this action;

  J. Award Keurig its costs, pre-judgment interest and post-judgment interest;

  K. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: February 1, 2016

*/s/ Michael A. Albert*
Michael A. Albert, BBO # 558566
malbert@wolfgreenfield.com
Justin C. Colannino, BBO # 679473
jcolannino@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646.8000 Phone
(617) 646.8646 FAX

*Attorneys for Plaintiff*